# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ROBERT LEON HILLMAN,**

       **Petitioner,**

                              **Case No. 2:15-cv-2417**

     **v.**                        **JUDGE GRAHAM**

                                    **Magistrate Judge King**

**WARDEN, CHILLICOTHE
CORRECTION INSTITUTION,**

       **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 3), the *Amended Petition* (ECF No. 27), Petitioner's brief in support (ECF No. 19), Respondent's *Return of Writ* (ECF No. 17), Respondent's *Supplemental Answer to Complaint* (ECF No. 33), Petitioner's *Reply* (ECF No. 24), Petitioner's *Supplemental Traverse* (ECF No. 35), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. It is **FURTHER RECOMMENDED** that Petitioner's *Motion for Sanctions* (ECF No. 43) be **DENIED.**

Petitioner's *Request for the Court to Take Judicial Notice* (ECF No. 38), Petitioner's *Motion for Leave to File Sur Reply to Respondent's Motion in Opposition to Petitioner's Motion for Judicial Notice* (ECF No. 40), and Petitioner's *Motion to Take Judicial Notice and Motion for Order to Expand the Records* (ECF No. 41) are **DENIED**. Petitioner's *Motion for an Immediate Ruling in this Case as Justice Requires* (ECF No. 45) is **DENIED** as moot.

## Facts and Procedural History

This case arises out of Petitioner's February 25, 2014, convictions, following a jury trial in the Franklin County Court of Common Pleas, for burglary, attempted burglary, theft, and receiving stolen property.  The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Appellant's alleged crimes arose out of separate incidents on two different dates. On October 21, 2013, Eric Dunn, a maintenance director for a property rental company, was working at an apartment building located at 451 East Town Street in downtown Columbus, Ohio. While working that morning, Dunn noticed a bicycle leaning against the building directly beneath an open window leading into one of the apartments. Having previously heard a suspicious noise coming from the apartment near the open window, Dunn called the police, believing that someone had broken into the property. Columbus Police Officers Shawn Pagniano and David Larrison responded to the call. Officer Pagniano monitored the open window while Dunn opened the secured entrance to the building for Officer Larrison. During this time, no one entered or exited the building through the window.
>
> Upon entering the building, Dunn and Officer Larrison discovered a man, whom both identified at trial as appellant, alone in a common hallway outside the apartments. Officer Larrison noticed that appellant was carrying a colorfully decorated laptop computer and detained appellant. In addition to the laptop, appellant was also found to be in possession of cables, cell phones, a pair of gloves, and a knife. After detaining appellant, Officer Larrison walked down the hallway and discovered a backpack, which was full of movie and video game discs, next to an apartment door. Officer Larrison checked the door of the apartment located next to where he found the backpack and discovered that the door was unlocked. After announcing his presence and receiving no reply, Officer Larrison entered the apartment, noticed that the window was open, and ascertained that the open window was the same one that Dunn noticed was open and was being monitored by Officer Pagniano. Officer Larrison found no one in the apartment or in the common hallway inside the building.
>
> The tenant of the apartment was identified as Molly Schneider. Schneider testified at trial that, when she departed for work on the morning of October 21, 2013, she had locked the door to her

2

apartment and left her kitchen window slightly open. Schneider stated that the items found in appellant's possession had been in her apartment when she left and that, among the items recovered from appellant, were a laptop worth between $1,200 to $1,400, an iPod worth $100, and an iPhone worth $400. Schneider stated that she did not know appellant and that he did not have permission to enter her home or to take her property.

On November 13, 2013 at approximately 2 a.m., Hillary Tintera was at her next door neighbor's residence at 1975 Indianola Avenue in Columbus, Ohio, near The Ohio State University ("OSU") campus, when she noticed a man standing at the front door of the residence. At trial, Tintera testified that she saw through the glass door that the man had his hand on the door and was looking inside while attempting to gain access to the residence. When the man noticed her, he walked away from the door. Realizing that she left her home next door unlocked, Tintera exited her neighbor's residence through the back door and ran to her home's back door. Once inside, she locked the back door and ran to the front door. As she locked the front door, she saw the same man with his hand on the door knob attempting to open the door. Tintera called the police and provided a description of the man and his path of travel. At trial, Tintera testified that she was not sure if appellant was the man she saw attempting to open the door to her home, but stated that he fit the description of the man she saw that night. Tintera testified that appellant would not have had permission to enter her house or take her property.

On the same date at approximately 2:15 a.m., Columbus Police Officer Jeffrey Hall was working in the OSU campus area as a plainclothes patrol officer when he received a report of a prowler in the area. The report described the man as a black male wearing a black hoodie with beige or tan pants and carrying a backpack and green bag. While Officer Hall was driving an unmarked car in the area, he saw a man matching the prowler's description, whom Officer Hall identified at trial as appellant. After observing appellant jaywalk directly in front of his car, the plainclothes officer parked his vehicle and followed appellant. The plainclothes officer observed appellant as he walked through yards between houses and peered into the window of a house. After appellant was detained by other officers, Officer Hall returned to the house where he had observed appellant looking into a window. Outside that house, Officer Hall discovered the green bag that he had earlier observed appellant carrying. Officer Hall testified that the bag was full of frozen food.

3

On November 13, 2013, Officer Rees was also assigned to the area surrounding the OSU campus when he heard that Officer Hall saw a person matching the description of the suspect. Officer Rees arrived at the area where Officer Hall reported seeing the suspect and began searching for Officer Hall. As he was looking for the suspect and Officer Hall, Officer Rees observed a man matching the prowler's description emerge from between two houses. Officer Rees testified that he approached the man, whom Officer Rees identified at trial as appellant, at which point the man became startled and, according to the officer, stated something similar to "I haven't done anything." (Tr. 197.) Officer Rees stopped appellant, who was wearing a backpack at the time of the stop, and questioned appellant about his activity and purpose. Officer Rees testified that appellant's backpack contained a laptop, an Xbox, video games, controllers, and power cords. Officer Rees noticed that the words "Bryan Takayama 2010" were written on the outside of the Xbox, and, based upon this information, was able to ascertain the identity of the owner of the Xbox, who confirmed to Officer Rees that his Xbox was missing. (Tr. 200.) Further investigation revealed that Kristin Kotalo owned the laptop discovered in the backpack in appellant's possession.

Bryan Takayama testified at trial that, on November 13, 2013 at approximately 4:30 a.m., he was in bed at his home on Iuka Avenue near OSU when he received a call from a police officer who inquired as to the whereabouts of his Xbox. Takayama went downstairs to check on his possessions and discovered that his Xbox, two controllers, five video games, and power cords were missing. Takayama testified that he could not recall whether or not his doors were locked that evening when he went to bed, but he found that his back door was unlocked when he went downstairs to check his property. Takayama also discovered that a significant quantity of frozen food was missing from his freezer. Takayama stated that appellant did not have permission to be inside his home or to take his property.

Kristin Kotalo testified at trial that she lived on East 18th Avenue near the OSU campus. On November 13, 2013 at approximately 3 a.m., Kotalo was contacted by police, who inquired if she was missing her laptop. Kotalo discovered that her laptop, which had been in her home on her living room table when she went to bed, was missing. When the police arrived at her residence, Kotalo identified her laptop, which was marked with a distinctive sticker, among the possessions shown by police. Kotalo could not recall whether or not her doors were locked that evening before she went to bed, but she stated that the officers who checked her house

4

found no signs of forced entry. Kotalo testified that appellant did not have permission to be in her home or to take her property.

On November 21, 2013, a Franklin County Grand Jury indicted appellant on one count of attempted burglary in violation of R.C. 2923.02 and 2911.12, a felony of the third degree, and two counts of burglary in violation of R.C. 2911.12, both felonies of the second degree. On December 19, 2013, a Franklin County Grand Jury indicted appellant on one count of burglary in violation of R.C. 2911.12, a felony of the second degree, one count of theft in violation of R.C. 2913.02, a felony of the fifth degree, and one count of receiving stolen property in violation of R.C. 2913.51, a felony of the fifth degree. On February 10, 2014, the trial court granted appellant's motion to discharge his trial counsel and proceed pro se with assistance of advisory counsel.

On February 20, 2014, a jury found appellant guilty of all counts. On February 25, 2014, the trial court sentenced appellant, merging the theft count with the receiving stolen property count. The court imposed a sentence of six years for each of the three counts of burglary, to be served consecutively to each other for a total of eighteen years, and a total of three years as to all other counts, to be served concurrently with the sentences for the counts of burglary. Appellant timely appealed.

On July 18, 2014, appellant filed a motion to discharge his appellate counsel which was granted on July 21, 2014. Appellant was granted an extension of time to file a supplemental brief, which he filed pro se on July 30, 2014. Plaintiff-appellee, State of Ohio ("the state"), filed responses to appellant's merit brief and his supplemental brief.

II. Assignments of Error

Appellant appeals, assigning the following three errors in his original merit brief and an additional eight errors in his supplemental brief for our review:

Appellant's first brief:

[I.] THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT DENIED HIM THE RIGHT TO CALL AN ALIBI WITNESS FOR HIS DEFENSE.

[II.] THE APPELLANT'S INDICTMENTS FOR BURGLARY AND RECEIVING STOLEN PROPERTY SHOULD NOT HAVE BEEN JOINED TOGETHER AS COMPRISING PART OF A COMMON SCHEME OR PLAN.

[III.] THE APPELLANT'S CONVICTIONS FOR BURGLARY AND RECEIVING STOLEN PROPERTY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Appellant's Supplemental Brief:

[I.] APPELLANT CONTENDS THAT HIS RIGHTS TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAW UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS [SIC] WERE DELIBERATELY VIOLATED WHEN THE TRIAL COURT ALLOWED THE JURY TO CONVICT, AND THAN [SIC] THE COURT SENTENCED THE APPELLANT ON THE CHARGE OF ATTEMPTED BURGLARY IN A SHAM LEGAL PROCESS WITHOUT HAVING ACQUIRED SUBJECT–MATTER JURISDICTION AND (2) ALLOWING MRS. TINTERA TO TESTIFY, AS HER TESTIMONY WAS IRRELEVANT ON ANY ISSUE THAT WAS BEFORE THE COURT, AND THE COURT (3) GAVE INSUFFICIENT JURY INSTRUCTIONS ON THE ISSUE OF OTHER BAD ACTS CRIM RULE 52(B), CAUSING A DEFECTIVE VERDICT.

[II.] APPELLANT CONTENDS THAT HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS, AND EQUAL PROTECTION OF THE LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES [CONSTITUTION] WAS VIOLATED WHEN THERE WAS STATE WITNESS MISCONDUCT BY POLICE OFFICER, DAVID LARRISON THAT PREVENTED APPELLANT FROM HAVING A FAIR TRIAL, AND THE JURY FROM PROPERLY FUNCTIONING, AND FAILED TO PRESERVE EVID [SIC].

[III.] APPELLANT CONTENDS THAT HE WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW UNDER THE FIFTH, AND THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS [SIC], AND SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION WHERE PROSECUTORIAL MISCONDUCT PREVENTED APPELLANT FROM HAVING A FAIR TRIAL, AS THE PROSECUTOR (1) KNOWINGLY USED FALSE TESTIMONY

TO GAIN THE CONVICTIONS, AND (2) ARGUED FACTS NOT SUPPORTED BY THE EVIDENCE.

[IV.] THE APPELLANT CONTENDS THAT HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW UNDER THE FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES [CONSTITUTION] WERE VIOLATED WHEN APPELLANT'S CONVICTIONS AND SENTENCES ARE BOTH CONTRARY TO LAW, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEY FAILED TO PROVE IDENTITY, AND TRESPASS.

[V.] APPELLANT CONTENDS THAT HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTIONS [SIC] WERE VIOLATED WHEN THE STATE CONVICTED AND SENTENCED APPELLANT OF CRIMES NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE, THEY FAILED TO PROVE IDENTITY, TRESPASS, AND MODUS OPERANDI.

[VI.] APPELLANT CONTENDS THAT HE WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW UNDER THE FIFTH AND SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS [SIC] AND SECTION 10 ARTICLE 1 OF THE OHIO CONSTITUTION, WHEN HE WAS PREVENTED FROM HAVING A FAIR TRIAL WITH REASONABLE, AND RELIABLE RESULTS DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING THE PRE–TRIAL INVESTIGATIVE, AND ADVISORY STAGES OF THE PROCEEDINGS.

[VII.] APPELLANT CONTENDS THAT THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION AND DENIED APPELLANT DUE PROCESS, AND EQUABL [SIC] PROTECTION OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN THE JUDGE FAILED TO ACT IMPARTIAL. (2) DENIED APPELLANT'S REQUEST FOR A SHORT CONTINUANCE IN ORDER TO PREPARE FOR TRIAL AND OBTAIN DEFENSE WITNESSES. (3) FOR MISJOINING INDICTMENTS. (4) FAILING TO RULE IN FAVOR OF APPELLANT'S THREE REQUEST[S] FOR CRIMINAL RULE 29 ACQUITTALS. (5) [sic] FOR GIVING FLAWED JURY INSTRUCTIONS WHICH PREJUDICED THE APPELLANT, AND FOR FAILNG TO MERGE SENTENCES

AFTER HAVING RULED THAT THE CRIMES WERE ONE SCHEME, AND ONE COURSE OF CRIMINAL CONDUCT ALLIED OFFENSES, WHICH VIOLATED R.C. 2941.25, AND (7) [sic] DENYING APPELLANT THE COMPULSORY PROCESS, MAKING REISSUABLE ERRORS, AND HANDING DOWN A DETERRENT PUNISHMENT.

[VIII.] APPELLANT CONTENDS THAT HE WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW IN VIOLATION OF THE 5TH, 8TH AND 14TH AMENDMENTS TO THE UNITED STATES, CONSTITUTIONS [SIC] AND OHIO STATUTORY LAWS WHEN APPELLANT WAS PLACED IN PRISON UPON A SENTENCE WHICH WAS IMPOSED CONTRARY TO LAW, AS SAID SENTENCE DID NOT MEET THE REQUIREMENTS MANDATED BY R.C. 2929.14(C)(4).

*State v. Hillman,* Nos. 14AP-252, 14AP-253, 26 N.E. 3d 1236 (Ohio App. 10th Dist. 2014).  On December 30, 2014, the appellate court affirmed the judgment of the trial court, but remanded the case to the trial court for issuance of a *nunc pro tunc* judgment entry correcting a clerical error.  *Id.*  On February 24, 2015, the appellate court denied Petitioner's motion for judicial notice, application for reconsideration, motion to certify conflict, and application for *en banc* consideration.  (ECF No. 17-1, PageID# 517).  On June 3, 2015, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal.  *State v. Hillman*, 142 Ohio St.3d 1477 (Ohio 2015).

Meanwhile, on August 24, 2014, Petitioner filed a petition for post conviction relief in the trial court.  (ECF No. 17-1, PageID# 519).  He alleged that police had lied, that he had been denied the effective assistance of counsel during the investigative and advisory stages of the proceedings, and that he had been denied a fair trial based on prosecutorial misconduct.  On January 14, 2015, the trial court denied the petition (as well as additional motions that Petitioner had filed in conjunction with his petition for post conviction relief).  (PageID# 582).  On March 25, 2015, the appellate court dismissed Petitioner's appeal from that judgment based on

Petitioner's failure to comply with Appellate Rule 3(D), which requires that a notice of appeal designate the judgment, order or part thereof from which the appeal is taken. (PageID# 604). Petitioner apparently did not file an appeal from that decision.

Petitioner filed the original *Petition* in this action on June 16, 2015 and he filed the *Amended Petition* on October 9, 2015. He alleges that the trial court lacked subject matter jurisdiction over the attempted burglary charge (claim one); that the trial court abused its discretion by permitting testimony from prosecution witness Tintera (claim two); that he was denied a fair trial based on prosecutorial misconduct in using allegedly false testimony and in allegedly violating *Brady v. Maryland,* 373 U.S. 83 (1963) (claim three); and "witness misconduct" (claim four). He also alleges that the evidence is constitutionally insufficient to sustain his convictions (claim five); that he was denied due process and equal protection because the trial court refused to grant his request for a continuance (claim six); that he was denied the effective assistance of trial counsel during the investigative and advisory stages of the proceedings (claim seven); that he was denied a fair trial based on the prosecutor's improper misjoinder of offenses and lack of fingerprint evidence (claim eight); that he was denied a fair trial based on the use of other bad acts evidence (claim nine); that the trial court interfered with his ability to select an impartial jury (claim ten); that the trial court issued flawed jury instructions regarding evidence of other bad acts (claim eleven); that he was denied due process and equal protection because he could not present defense witnesses (claim twelve); that his sentence violates the Eighth Amendment (claim thirteen); that he was denied due process and equal protection because the jury failed to detect and disregard false testimony by prosecution witnesses (claim fourteen); and that the trial court denied him due process and equal protection

because it failed to hold a proper suppression hearing (claim fifteen).  Respondent contends that Petitioner's claims are procedurally defaulted or lack merit.

## Motion for Judicial Notice and to Expand Record

Petitioner moves, pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, to expand the record with a copy of a 9-1-1 recording in order to support of his claim that the prosecutor knowingly presented false testimony and that Officer David Larrion lied when he testified that Eric Dunn told the 9-1-1 operator that Dunn had witnessed a black male crawl through the window of the apartment.  According to Petitioner, police should instead have looked for a white male wearing a green hoodie.  (ECF No. 41, PageID# 1566).  In support of this request, Petitioner submits a document entitled "Event Information – P130899046 [Archive – Intergraph]" which, according to Petitioner, relates to the 9-1-1 call.  (PageID# 1567, 1577).[1]

Rule 7 confers on a court the authority to expand the record with materials relating to a habeas corpus petition:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
>
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.

---

[1] The document apparently relates to the reported events at 451 E. Town Street on October 21, 2013.  The "Remarks" section of the document contains the following:  "Watched someone climb in the window used his bike to get access to the window[.] Window is on the east side of the building behind the bushes[.] This is at Farber House[.] Caller is on the side of the building watching the window[.] One half of 168A going in[.] East side of Bldg and Mt bike app inside per 168A[.]  One jumped out window MW grn hoodie[.] Not dot on 2nd subject[.]  161A has one app with him. . . . LOI search completed at 10/21/13 10:04:51[.] MB 40 was on a blue/purple mountain bike had a backpack with a Xbox and apprx 30 games inside[.]  (ECF 41-1, PageID# 1577).

(c) Review by the Opposing Party. The judge must give the party
against whom the additional materials are offered an opportunity to
admit or deny their correctness.

The purpose of the rule is to enable a court to determine whether an evidentiary hearing is
warranted and, if not, to efficiently resolve the claims asserted in the petition. *Blackledge v.
Allison*, 431 U.S. 63, 81 (1977). The decision whether to order an expansion of the record
pursuant to Rule 7 falls within the sound discretion of the district court. *Ford v. Seabold*, 841
F.2d 677, 691 (6th Cir.1988).

As the Court discusses more fully below, expansion of the record to include a copy of
Dunn's 9-1-1 recorded call to police is not determinative to the resolution of Petitioner's claims
and will not assist Petitioner in establishing his claims. Therefore, the *Motion for Judicial Notice
and Motion for Order to Expand the Records* (ECF No. 41) is **DENIED**.

### Motion for Sanctions

Petitioner also moves, pursuant to Rule 11 of the Federal Rules of Civil Procedure, for an
award of sanctions against Respondent for allegedly acting in bad faith and attempting to
perpetrate a fraud on the Court. Petitioner specifically claims that Respondent improperly
opposed Petitioner's request for an expansion of the record (addressed *supra*); Petitioner also
alleges that Respondent improperly attempted to conceal exculpatory evidence from him.

Rule 11 provides in pertinent part as follows:

(b) Representations to the Court. By presenting to the court a
pleading, written motion, or other paper – whether by signing,
filing, submitting, or later advocating it – an attorney or
unrepresented party certifies that to the best of the person's
knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to
harass, cause unnecessary delay, or needlessly increase the cost of
litigation;

11

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

A violation of Rule 11(b) can be met with an appropriate sanction, Rule 11(c)(1), including nonmonetary directives, an order to pay a penalty, or "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Rule 11(c)(4).

However, nothing in the record supports Petitioner's allegation that Respondent acted improperly or in bad faith and the record offers no basis for the imposition of sanctions against Respondent.  It is therefore **RECOMMENDED** that Petitioner's *Motion for Sanctions* (ECF No. 43) be **DENIED.**

### Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state court convictions. The United State Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a

highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Under the AEDPA, habeas corpus relief should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d)(1); *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). *See also* 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). Moreover, the factual findings of a state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends a legal principle from Supreme Court precedent

to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748-49. The burden of satisfying the standards of § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter*, 562 U.S. 102 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. "'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" *Holder v. Palme*r, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Pinholster,* 563 U.S. 170. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

14

**Claim One**

In claim one, Petitioner alleges that the trial court lacked subject matter jurisdiction because the prosecution failed to present any eyewitnesses to identify Petitioner as the perpetrator, presented no physical evidence, could not establish that Petitioner moved a door or window to gain access to the home(s), and lacked a victim affidavit or complaint sufficient to permit the prosecution to properly take the case to the grand jury in order to secure an indictment. Petitioner also argues that the State failed to provide any evidence that he trespassed inside the home(s). *Amended Petition* (ECF No. 27, PageID# 1454). The state appellate court rejected Petitioner's challenge to the trial court's jurisdiction:

> We first address appellant's argument raised in his first supplemental assignment of error, which contends that the trial court lacks subject-matter jurisdiction over these cases. Because this is a criminal matter and the incidents in question occurred in the county in which the trial court is situated, we find no merit in appellant's assertions regarding subject-matter jurisdiction. *See* R.C. 2931.03 (defining jurisdiction of the courts of common pleas). Therefore, insofar as appellant's first supplemental assignment of error asserts error with respect to the subject-matter jurisdiction of the trial court, the first supplemental assignment of error is overruled as to the issue of subject-matter jurisdiction.

*State v. Hillman,* 26 N.E.3d at 1244.

Petitioner's claim that the trial court lacked jurisdiction raises an issue regarding the alleged violation of state law and does not present an issue appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848

15

F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). It is only where the error resulted in the denial of fundamental fairness will habeas relief be granted based on a violation of state law. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

However, to the extent that Petitioner argues that the evidence was constitutionally insufficient to sustain his convictions, this claim is addressed below.

### Claim Two

In claim two, Petitioner alleges that he was denied a fair trial because the trial court permitted Hillary Tintera to testify against him, even though she was unable to identify Petitioner as the man she saw attempting to gain entrance to her home. According to Petitioner, Tintera's testimony violated state evidentiary rules and was irrelevant. However, a claim based on a state court's alleged violation of state evidentiary rules or law does not ordinarily justify federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *see also Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief on this basis, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles*, 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). "'Errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court's evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Giles*, 449 F.3d at 704 (citing

16

*Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)).  The record in this action does not meet this standard.

### Claims Five, Fourteen

In claim five, Petitioner alleges that the evidence is constitutionally insufficient to sustain his convictions and, in claim fourteen, Petitioner alleges that he was denied due process "where the jury failed to detect and disregard false testimony," the State admitted that it could not prove trespass, and Tintera could not identify Petitioner as the man whom she saw.  *Amended Petition* (ECF No. 27, PageID# 1460).  Respondent argues that Petitioner has procedurally defaulted these claims.  *Supplemental Answer to Complaint* (ECF No. 33, PageID# 1523).  However, the Court has liberally construed Petitioner's pleadings in this regard as asserting a challenge to the constitutional sufficiency of the evidence.  Because that claim was presented to the state courts, this Court will therefore also consider the merits of that claim.

The state appellate court considered and rejected Petitioner's claim of insufficiency of the evidence, reasoning in relevant part as follows:

> It is difficult to decipher some of appellant's arguments. Indeed, several of his assignments of error are phrased in such a way as to allege error in the admission of evidence, police misconduct, prosecutorial misconduct, and judicial bias. Nevertheless, after careful review, we find that appellant's third assignment of error, the second part of his first supplemental assignment of error, his second supplemental assignment of error, his third supplemental assignment of error, his fourth supplemental assignment of error, his fifth supplemental assignment of error, and the fourth part of his seventh supplemental assignment of error essentially assert that his convictions were against the manifest weight of the evidence and not supported by the sufficiency of the evidence.
>
> We first review appellant's claim that his convictions were insufficiently supported by the evidence. Sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP–1093, 2010-Ohio-1881, 2010 WL 1731238, ¶ 36,

citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id*. at 273, 574 N.E.2d 492.

Appellant's only argument regarding the sufficiency of the evidence reduces to the contention that nothing in the record established that appellant entered the homes of the victims of this case. Appellant argues that the act of trespassing into the residence is an essential element of the crime of burglary, and, as a matter of law, his convictions cannot stand since there was no evidence of such at trial. Although we agree that trespass is an element of the offense of burglary, appellant's argument fails to appreciate that convictions can be sustained based on circumstantial evidence. *See State v. Jewett*, 10th Dist. No. 11AP–1028, 2013-Ohio-1246, 2013 WL 1303787, ¶ 34, quoting *State v. Fausnaugh*, 10th Dist. No. 11AP–842, 2012-Ohio-4414, 2012 WL 4466483, ¶ 26, quoting *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991) (" 'Under Ohio law * * * circumstantial evidence can have the same probative value as direct evidence, and "[a] conviction can be sustained based on circumstantial evidence alone." ' "). Here, the victims provided circumstantial evidence of burglary by identifying their property recovered from appellant, stating that such property was inside their respective residences before police recovered the property from appellant, and confirming that appellant did not have permission to enter their residences or to take their property. Thus, ample circumstantial evidence supported the element of trespass in the charged offenses, and we, therefore, find appellant's arguments regarding the sufficiency of the evidence to be without merit.

We next examine appellant's contentions regarding the manifest weight of the evidence. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. *See also Thompkins* at 386, 678 N.E.2d 541. . .

18

First, appellant argues that his conviction for attempted burglary is against the manifest weight of the evidence because Tintera could not identify him at trial as the man who attempted to gain access to her residence on November 13, 2013. He also argues that she did not identify him upon his apprehension but only provided police with a "vague clothing description of a suspect." (*Appellant's Supplemental Brief*, 1.) However, "[t]he identity of a perpetrator may be established by the use of direct or circumstantial evidence." *State v. McClurkin*, 10th Dist. No. 11AP–944, 2013-Ohio-1140, 2013 WL 1200255, ¶ 43, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315.

Here, ample circumstantial evidence existed to allow the jury to conclude that appellant was the man who attempted to gain access to Tintera's residence. At trial, Tintera testified that the man attempting to open the front door to her residence was "attempting to open the door as I locked the door." (Tr. 142.) Tintera further testified that lights in her residence, including her porch light, were on when she was locking her door. Tintera testified that there was only a glass panel between her and the man and that they were only about a foot apart. Tintera testified that, although she could not identify him in court because "[i]t was a long time ago," she stated that appellant matched the general description of the man who attempted to enter her home. (Tr. 145.) Based on Tintera's testimony regarding the general description of appellant and the fact that police arrested appellant later that same day, after observing him matching the description provided by Tintera, circumstantial evidence provided support for the identification of appellant as the man who attempted to enter Tintera's residence. *McClurkin* at ¶ 43. Thus, we cannot say that the jury lost its way by concluding that appellant was the man who attempted to gain access to Tintera's residence.

Regarding the charges arising out of the events of October 21, 2013, appellant also attacks the credibility of Officer Larrison, Dunn, and Schneider. We find appellant's arguments regarding the credibility of the witnesses to be unavailing given the other evidence supporting his convictions. Testimony from Officer Larrison, Schneider, and Dunn supported appellant's convictions for theft, receiving stolen property, and burglary arising out of the incident on October 21, 2013. Dunn and Officer Larrison both testified that they saw appellant carrying a laptop and other electronic equipment in the hallway of the apartment complex where Schneider lived. Schneider testified that the items found in appellant's possession belonged to her and that appellant did not have her permission to be present in her apartment or to possess

her property. Appellant fails to point to any evidence in the record that casts serious doubt upon the credibility of the witnesses or their accounts.

Further, regarding the charges arising out of the events of November 13, 2013, Officer Hall, Officer Rees, Takayama, and Kotalo provided testimony supporting appellant's convictions for burglary. Officer Hall identified appellant at trial as the man he pursued who matched the description given earlier by Tintera of the man who was attempting to gain access to her residence. Officer Rees testified that he discovered appellant, who matched Tintera's description, traveling erratically between houses. Officer Rees further testified that appellant was carrying in his possession items that were later identified as belonging to Takayama and Kotalo. Takayama and Kotalo both testified that the items recovered from appellant by the officers belonged to them, that such items were last seen in their respective homes, and that appellant did not have permission to possess their property. Finally, we find the testimony of Schneider regarding the value of the property at issue in the charge of receiving stolen property was sufficient. Schneider testified that the value of her laptop was between $1,200 to $1,400, the value of her iPod was around $100, and the value of her cell phone was $400. (Tr. 160–61.) Appellant points to nothing in the record to dispute the value of the items offered by Schneider at trial.

***

In conclusion, we find that sufficient evidence supported appellant's convictions and that such convictions were not against the manifest weight of the evidence. Accordingly, we overrule appellant's third assignment of error, the second part of his first supplemental assignment of error, his second supplemental assignment of error, his third supplemental assignment of error, his fourth supplemental assignment of error, his fifth supplemental assignment of error, and the fourth part of his seventh supplemental assignment of error.

*State v. Hillman*, 26 N.E.3d at 1251-54.

To the extent that Petitioner claims that his convictions are against the manifest weight of the evidence, that claim fails to offer a basis for federal habeas corpus relief. Unlike a claim that the evidence at trial was not sufficient to support a conviction – a claim that implicates the due

process clause of the United States Constitution – a claim that the conviction was against the manifest weight of the evidence raises only a matter of state law. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).  Consequently, the Court cannot grant federal habeas corpus relief on this claim.  *See Pulley v. Harris*, 465 U.S. at 41.

A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  To determine whether the evidence was constitutionally sufficient to support a conviction, a court must view the evidence in the light most favorable to the prosecution.  *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319).  The prosecution is not affirmatively required to "'rule out every hypothesis except that of guilt."  *Id.* (quoting *Jackson,* 443 U.S. at 326).  "[A] reviewing court 'faced with a record that supports conflicting inferences must presume, even if it does not appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id*. (quoting *Jackson*, at 326).

Further, this Court must afford a "double layer" of deference to state court determinations about the sufficiency of the evidence.  As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due, first, to the jury's finding of guilt because the standard, established by *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Second, and even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*.  *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Petitioner argues that the verdicts of guilt are based on mere speculation and conjecture, and are insufficient to sustain his convictions.  Specifically, he observes that Tintera could not identify him and that the State failed to produce an eyewitness or fingerprint evidence placing him inside the residences.  *Supplemental Traverse* (PageID# 1540-42).  This argument is unpersuasive.  As discussed by the state appellate court, proof of Petitioner's guilt did not require that the prosecution present direct evidence (whether fingerprint evidence or eyewitness testimony) that he entered, or attempted to enter, the residences.  Circumstantial evidence is constitutionally sufficient to sustain a criminal conviction. *Saxton v. Sheets*, 547 F.3d 597, 602, 606 (6th Cir. 2008) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).  The circumstantial evidence in the case against Petitioner was strong.

Although Tintera could not identify Petitioner at trial as the man she saw attempting to enter her neighbor's home and her home in the early morning hours of November 13, 2013, (*Trial Transcript*, ECF No. 17-2, PageID# 749-50, 751), she testified that the person she saw was carrying a full backpack and handbag, and she provided a detailed description of that person to the police.  (*Id.*; *see also id.* at PageID# 752).  Tintera also testified that, when that man left her home, he walked down Indianola and up 19th Avenue, towards Summit.  (PageID# 752).  "Less than a minute" later, Officer Hall, who had responded to Tintera's call regarding a prowler in the area, observed Petitioner walking in that same direction, away from Indianola and crossing Summit.  Further, Petitioner matched the description that Tintera had provided, *i.e.,* a black male wearing a black hoodie and beige or tan pants, carrying a dark colored backpack and a green bag.  (PageID# 781-83).  Officer Hall observed Petitioner acting suspiciously by cutting through yards between houses, and peering into the window of another home.  (PageID# 786, 788).  He recovered from underneath the window the green bag that Petitioner had been carrying and

which was filled with frozen food.  (PageID# 790).  Police also found Petitioner in possession of items that had been stolen from Bryan Takayama and Kristin Kotalo that same night. Significantly, Takayama reported that frozen food had been taken from his freezer.

On October 21, 2013, Eric Dunn, the maintenance director for a property management company, called police when he observed a bicycle leaning against a wall beneath an open window of one of the apartment buildings that had recently been broken into.  (PageID# 677). Dunn watched the window until police arrived a few minutes later.  (PageID# 682).  Dunn let police into the building and saw Petitioner standing inside, apparently getting ready to exit the building and holding a laptop and other belongings of a tenant.  (PageID# 685).  Petitioner was not a tenant of the building.  (PageID# 686).  The building had a controlled, secured access. (PageID# 682).  The door to the apartment was unlocked and the window was open although the tenant, Molly Schneider, had locked the door to her apartment when she left that morning.

 In reviewing a claim of insufficiency of the evidence, a habeas court must determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found beyond a reasonable doubt that the petitioner committed the essential elements of the crimes charged. *Saxton v. Sheets*, 547 F.3d at 602. This Court cannot so conclude.  Further, the state court's decision on this issue was not unreasonable given the strong circumstantial evidence of Petitioner's guilt.  *Id.* at 606 (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)). For the reasons detailed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's convictions.

Claims five and fourteen are without merit.

**Claims Three, Four**

In claim three, Petitioner alleges that the prosecutor knowingly presented false testimony from Officer Larrison and Officer Hall, in violation of *Brady v. Maryland*, and that his conviction is improperly based on perjured testimony.  In claim four, Petitioner asserts a claim of "witness misconduct."    Petitioner argues that Officer Larrison lied when he testified that  Eric Dunn had given a description of the burglar to the 9-1-1 operator and identified Petitioner as that man, (*Transcript*, ECF No. 17-2, PageID# 706-07; 727; 873-75), because Dunn did not see anyone go in through or out of the apartment window. *See id.* (PageID# 684, 688).  Petitioner also argues that Officer Hall falsely testified that he witnessed Petitioner peek into the window of a home, because Hall did not include that information in his police report, but only claimed to have refreshed his memory of that detail when he reviewed the report.  *Amended Petition* (ECF No. 27, PageID# 1461).

The state appellate court did not directly address Petitioner's allegations of prosecutorial misconduct.  Noting that it was difficult to decipher some of the Petitioner's arguments, the state appellate court instead concluded that "several of [Petitioner's] assignments of error. . . phrased in such a way as to allege error in the admission of evidence, police misconduct, prosecutorial misconduct, and judicial bias" essentially related to his claim that his convictions were against the manifest weight of the evidence and were not supported by the sufficiency of the evidence, and addressed these issues on that basis.  *State v. Hillman*, 26 N.E. 2d at 1251-52.  Nonetheless, Petitioner's claims of prosecutorial misconduct plainly lack merit.

The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review.  *Donnell v. De Christoforo*, 416

U.S. 637 (1974).  Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness.  *Id.* at 642–43; *Martin v. Foltz*, 773 F.2d 711, 716–17 (6th Cir. 1985); *Angel v. Overberg*, 682 F.2d 605, 607 (6th Cir. 1982) (*en banc*).  This determination is made by evaluating the totality of the circumstances surrounding the case.  *Angel v. Overberg*, 682 F.2d at 607.

> Factors relevant in making this inquiry are: the degree to which the remarks may tend to mislead the jury and to prejudice the accused; whether the remarks were isolated or extensive; whether they were deliberately placed before the jury; and the strength of the case against the accused. Finally, this Court notes the "extreme nature of the prosecutorial misconduct required for a federal court to issue the writ."

*Martin v. Foltz*, 773 F.2d at 716 (citations omitted) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 120 (6th Cir. 1979)).

The deliberate deception of a court and jurors by the prosecution's presentation of known, false evidence is "incompatible with the rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972).

> There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected.  *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false", rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd* v. Collins, 209 F.3d at 517–518. A habeas petitioner has the burden of establishing a *Giglio* violation.  *See Foster v. Ward*, 182 F.3d 1177, 1191 (10th Cir. 1999).

*Malcum v. Burt*, 276 F.Supp.2d 664, 684 (E.D. Mich. 2003).

Additionally,

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady*, 373 U.S. at 86.  Evidence is material "[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Moreover, "[i]mpeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *O'Guinn v. Dutton*, 88 F.3d 1409, 1418 (6th Cir. 1996)(citing *United States v. Bagley*).  However, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  "In the absence of prejudice, even assuming a violation of *Brady*, reversal is not required." *United States v. Jones,* 766 F.2d 994, 998 n. 1 (6th Cir. 1985)(citing *United States v. Campagnuolo*, 592 F.2d 852, 861 & n. 9 (5th Cir. 1979)).

> [T]he government's failure to disclose potentially exculpatory information does not violate *Brady* "where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information' or where the evidence is available to defendant from another source." *United States v. Clark,* 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). *See also Todd*, 920 F.2d at 405.

*United States v. Cottage*, 307 F.3d 494, 499 (6th Cir. 2002).

The record in this action does not even suggest that the prosecution improperly withheld from Petitioner a copy of Dunn's 9-1-1 call to police, nor does it support Petitioner's claim that the prosecution knowingly presented false evidence.  Further, even assuming that it did, Petitioner cannot establish prejudice.

Dunn testified that he did not witness anyone climb in through or out of the apartment window.  *Trial Transcript* (PageID# 684).  Petitioner therefore did not need a copy of the 9-1-1 call to establish that Dunn could not have provided a description of the burglar of the apartment at the time that Dunn called the police.  Moreover, Petitioner cross-examined Officer Larrison and re-called him as a witness regarding his statement that Dunn had identified Petitioner as the burglar[2] and that the dispatcher had provided Officer Larrison with a description of the suspect. *Id.* (PageID# 727, 866, 873-75).  Therefore, the jury was made aware of any discrepancies in testimony in this regard.  In any event, in view of the other substantial evidence of Petitioner's guilt, Dunn's inability to provide a description of the person who climbed through the window of the apartment building, or Officer Larrison's testimony that Dunn had provided such a description, did not materially affect  the determination of Petitioner's guilt.

Police found Petitioner, whom Dunn had identified as not being a tenant of the apartment building, inside the secured access building, holding stolen property that had apparently just been taken from the apartment at issue.[3]  Under these circumstances, the jury could properly infer that Petitioner had entered the building through the open window of the burglarized apartment.

On November 13, 2013, Officer Hall responded to Tintera's call regarding a prowler in the campus area.  He observed Petitioner, who matched the caller's description, looking into the window of a home in the area.  *Transcript*, (PageID# 788, 794).  On cross-examination, Officer Hall acknowledged that he had not included this information in his police report.  *Id.* (PageID# 794, 796).  He testified that he only recalled that Petitioner had looked into the window when he

---

[2] Officer Larrison testified that, as he and Dunn walked into the apartment building, there was a black male walking toward him, and the maintenance worker whispered, "That's him, that's him right there[.]"  *Transcript* (PageID# 706); *see also id*. (PageID# 727).

[3] Petitioner states that he told police at the time of his arrest that he had bought the stolen items from a friend named Slim, and offered to show them where Slim lived.  *Transcript* (ECF No. 17-2, PageID# 635.)

read his report later – even though the report did not include that information. *Id.* (PageID# 795).

Again, nothing in the record supports Petitioner's claim that Officer Hall lied or that the prosecution knowingly elicited false testimony in this regard. The fact that Officer Hall did not mention in his police report that he had observed Petitioner looking in the window of a residence, or that he only recalled this fact after he had reviewed his police report, does not establish that Hall lied. Further, that testimony was simply irrelevant to the facts establishing Petitioner's guilt of the crimes charged. Petitioner has failed to establish the denial of a fair trial based on prosecutorial misconduct.

Claims three and four lack merit.

### Claims Six, Twelve

In claim six, Petitioner alleges that he was denied a fair trial because the trial court denied his request for a continuance to permit him to prepare for trial and subpoena defense witnesses after Petitioner elected to exercise his right to self-representation. In claim twelve, Petitioner alleges that the trial court unconstitutionally prevented him from subpoenaing defense witnesses. The state appellate court rejected these claims as follows:

> [A]ppellant asserts generally that the trial court erred by denying his request for a continuance. He asserts specifically that the court erred by denying his request for a continuance made on the day of trial because appellant sought to call an alibi witness.
>
> We review a trial court's decision to deny a request for a continuance for abuse of discretion. *Hamad v. Hamad*, 10th Dist. No. 12AP–617, 2013-Ohio-2212, 2013 WL 2394974, ¶ 13, citing *Young v. Young,* 10th Dist. No. 11AP–1148, 2012-Ohio-4377, 2012 WL 4364428, ¶ 6. "[A]buse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

When examining a trial court's denial of a motion for a continuance, a reviewing court "must weigh any potential prejudice to the defendant against a court's right to control its own docket and the public's interest in the efficient dispatch of justice." *State v. Woods,* 10th Dist. No. 09AP–667, 2010-Ohio-1586, 2010 WL 1408317, ¶ 24, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). Factors to consider when reviewing a motion for a continuance include, but are not limited to, the following: "'the length of delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.'" *Woods* at ¶ 24, quoting *Unger* at 67–68, 423 N.E.2d 1078.

Appellant contends that the trial court abused its discretion by refusing to grant his request for a continuance because he sought to call an alibi witness. Although appellant concedes that his disclosure of the existence of an alibi witness was not timely under Crim.R. 12.1, he nevertheless contends that the trial court should have granted him a continuance because he was acting pro se and had difficulties conducting legal research that might have revealed the need to comply with Crim.R. 12.1. The state responds that, even if appellant's witness were to testify as he expected, she would not have provided an alibi but, rather, only corroborated the fact that he was at the scene of the burglary just before the burglary took place. However, even if the witness could be construed as an alibi witness, the state contends that the trial court acted within its discretion in denying appellant's request since it was being utilized as a tactic to delay trial.

Crim.R. 12.1 provides as follows:

Whenever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.

We have previously stated that the defense of alibi "means that the defendant claims he was at some place other than the scene of the crime at the time the crime was taking place, and hence could not have been involved in the offense." *State v. Carter*, 10th Dist. No. 03AP–778, 2005-Ohio-291, 2005 WL 174806, ¶ 49, citing *State v. Payne,* 104 Ohio App. 410, 149 N.E.2d 583 (10th Dist.1957). "Black's Law Dictionary defines an alibi as 'a defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the "relevant time." ' " *Carter* at ¶ 49, quoting Black's Law Dictionary (7 Ed.Rev.1999) 72.

To determine whether the trial court abused its discretion in applying Crim.R. 12.1 to exclude evidence of alibi, a reviewing court must consider the following factors: (1) whether the newly asserted alibi evidence prejudices the prosecution's case; (2) whether there was a demonstrable and excusable showing of mere negligence; or (3) whether there was good cause shown. *State v. Smith*, 17 Ohio St.3d 98, 104, 477 N.E.2d 1128 (1985). "Stated alternatively, when the alibi evidence does not surprise or otherwise prejudice the prosecution's case, and when it is apparent that the defense acted in good faith, the exclusion of alibi evidence can constitute an abuse of discretion." *State v. Clinkscale*, 10th Dist. No. 98AP–1586, 2000 WL 775607 (Dec. 23, 1999). The notice requirement for an alibi defense serves to "protect the prosecution from false and fraudulent claims of alibi, often presented by the accused so near the date of the trial as to make it nearly impossible for the prosecution to ascertain any facts as to the credibility of the witnesses called by the accused." *Clinkscale,* citing *State v. Thayer*, 124 Ohio St. 1, 4, 176 N.E. 656 (1931). *See also Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

In *Smith,* the Supreme Court of Ohio examined the application of Crim.R. 12.1. After the state had rested, and with no prior notice, the defendant's counsel announced his intention to call his client and other alibi witnesses to establish that the defendant was somewhere else at the time of the offense. Because defense counsel had not filed a notice of alibi pursuant to Crim.R. 12.1, nor informed the prosecution of the intended use of the alibi defense, the trial court ruled that the defendant would be permitted to testify as to his alibi but could not call any alibi witnesses. Because the state would have suffered prejudice had the evidence been allowed at trial and because there was "some indicia of proof that the alibi evidence was withheld from the prosecution in bad faith as a planned trial tactic," the Supreme Court found that the trial court

did not abuse its discretion in excluding the alibi evidence. *Smith* at 104, 477 N.E.2d 1128.

Here, the transcript reflects the following discussion regarding the potential testimony of the witness sought by appellant:

THE COURT: And she—you would expect her to testify as to what?

[APPELLANT]: That I never had a bicycle. I was talking to her in the back of the apartment while this other person, whoever, was riding up, climbing through a window.

THE COURT: So basically it is an alibi witness. You're saying she can testify that you were somewhere else when this happened.

[APPELLANT]: Right, at the same time that this maintenance man is saying that he seen somebody ride up on a bicycle, I was talking to her. I didn't have a bicycle.

(Tr. 46.) Thus, based on appellant's assertions regarding the potential testimony to be offered by this witness, the trial court concluded, and appellant agreed, that appellant sought to introduce the witness's testimony to prove an alibi.

Several factors demonstrate that appellant's request for a continuance to present alibi testimony operated as a tactic to delay the proceedings. First, at the February 10, 2014 oral hearing in which the trial court reviewed appellant's request to represent himself, appellant made no mention of an alibi witness or the need to continue the trial date to subpoena additional witnesses. Additionally, appellant did not move for a continuance, nor did he attempt to alert the court to the need to subpoena an additional witness during the hearing on the morning of February 18, 2014, at which the trial court ruled on the state's motion for joinder of the indictments and addressed appellant's motions in limine. Instead, appellant waited until the afternoon session on February 18, 2104 until immediately before the jury was selected to inform the court that he required a continuance to subpoena an additional witness. Thus, it is a reasonable inference that appellant's failure to inform the court regarding the existence of the alleged alibi witness until such time was an intentional tactic to delay the proceedings. Additionally, the trial court found that the granting of the continuance would have imposed a substantial burden on the court as it had cleared its business for the trial. Therefore, we cannot say

that the trial court abused its discretion in refusing to grant appellant's request for a continuance.

Further, here, as in *Smith*, the state was unaware of the identity of the alleged alibi witness and, therefore, had no motive or opportunity to question the witness prior to the day of trial when appellant disclosed the existence of the alleged alibi witness. *Id*. at 104, 477 N.E.2d 1128. As a result, the state had no opportunity or motive to question the witness or to investigate facts. Even if the continuance had been granted, the state would have suffered prejudice as it was prepared for trial, having subpoenaed and made its witnesses available to testify. *See State v. Stevens*, 2d Dist. No. 16509, 1998 WL 151107 (Apr. 3, 1998) (where defendant waited until first day of trial to file notice of alibi, trial court did not abuse its discretion in excluding alibi testimony), declined to review in 82 Ohio St.3d 1474, 696 N.E.2d 602. Additionally, appellant failed to show good cause for why this witness, whose existence was known to him, was not disclosed until moments before the case was to proceed to trial.

Accordingly, we overrule appellant's first assignment of error and the second part of his seventh supplemental assignment of error.

*State v. Hillman,* 26 N.E. 3d at 1245-47.  Petitioner has failed to establish that the decision of the state appellate court is unreasonable so as to warrant federal habeas corpus relief.

To the extent that Petitioner claims that the trial court abused its discretion in violation of state law when it refused to grant his request for a continuance, this claim fails to present an issue appropriate for federal habeas corpus relief.  *See Pulley v. Harris*, 465 U.S. at 41. "[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).  Moreover, the efforts of state court trial judges to control the proceedings before them do not ordinarily rise to constitutional proportions.

Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion

> must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates [a defendant's constitutional trial right]. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

*Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). "A 'denial of a continuance rises to the level of a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of [a] justifiable request for delay.'" *Ambartsoumov v. Warden*, No. 2:12-cv-345, 2014 WL 3045394, at *27 (S.D. Ohio July 3, 2014)(quoting *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004)).

> The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process. *Ungar*, 376 U.S. at 589, 84 S.Ct. 841, 11 L.Ed.2d 921 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003) ("Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefit[t]ed the defense.").

 *Burton v. Renico*, 391 F.3d at 772.

Here, the state appellate court found that Petitioner's last minute request for a continuance was a tactic to delay proceedings. This finding is presumed to be correct, *see* 28 U.S.C. § 2254(c)(1), and Petitioner has failed to rebut the presumption of correctness afforded this factual finding. His witness was presumably known to him at the time that the trial court granted his request for self representation and on the morning of the first day of trial, yet he made no mention of such witness, or of needing a continuance of the trial at that time. Under these circumstances, Petitioner has failed to establish that the trial court acted unconstitutionally

when it denied his request for a continuance. Further, nothing in the record reflects that the State prevented him from calling or subpoenaing witnesses on his own behalf.

Claims six and twelve are without merit.

## Claim Seven

In claim seven, Petitioner alleges that he was denied the effective assistance of counsel during the investigatory and advisory stages of the proceedings. Petitioner complains that his attorney failed to investigate the case, failed to file pre-trial motions, and failed to notify Petitioner of the State's motion to join the indictments for purposes of trial. Petitioner also alleges that his attorney never interviewed any prosecution or potential defense witnesses. The state appellate court rejected Petitioner's claim of ineffective assistance of counsel as follows:

> [A]ppellant alleges ineffective assistance of counsel during the pretrial, investigative, and advisory stages of the proceedings. A convicted defendant alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution; and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *State v. Campbell*, 10th Dist. No. 03AP–147, 2003-Ohio-6305, 2003 WL 22783857, ¶ 24, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, cert. denied, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768 (1990).

> "Judicial scrutiny of counsel's performance must be highly deferential * * * [and] [a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, 104 S.Ct. 2052; *Bradley* at 141, 538 N.E.2d 373. In Ohio, a properly licensed attorney is presumed competent. *State v. Davis*, 10th Dist. No. 13AP–98, 2014-Ohio-90, 2014 WL 117409, ¶ 20, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301, 209 N.E.2d 164 (1965). Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 693 N.E.2d 267 (1998). "'To

show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" *State v. Griffin*, 10th Dist. No. 10AP–902, 2011-Ohio-4250, 2011 WL 3766751, ¶ 42, quoting *Bradley* at paragraph three of syllabus.

Initially, we must address appellant's contentions that he was prejudiced by his trial counsel's withdrawal from the case and that he was "tricked" into representing himself. Nothing in the record supports appellant's contention that he did not intend to exercise his right to self-representation. The record reflects that appellant's counsel informed the court weeks before trial that appellant wished to represent himself. Further, at an oral hearing before the trial court, the trial court engaged in a lengthy colloquy with appellant to determine if he wished to exercise his right to self-representation and whether he was capable of so doing. Throughout the discussion with the trial court, appellant repeatedly acknowledged that he was exercising his right to self-representation.1 We have previously stated that, if an appellant was responsible for what he or she now claims to be error, he or she is precluded from arguing it. *See In re Magnus*, 10th Dist. No. 01AP–411, 2001 WL 1045556 (Sept. 13, 2001), citing *State v. Seiber*, 56 Ohio St.3d 4, 17, 564 N.E.2d 408 (1990). Accordingly, we find appellant's contentions of ineffective assistance of counsel with regard to his attorney's withdrawal are without merit.[4]

FN1:  See Tr. 6–20. Appellant states: "Only thing I can't claim on appeal will be ineffective assistance of counsel because I'm representing myself." (Tr. 19.)

Next, appellant asserts that he received ineffective assistance of counsel during the pretrial stage of the proceeding. In support of this contention, appellant contends that his counsel erred by failing to file "appropreate [sic] pre-trial motions such as motions to suppress, motions to dismiss, and motions against prejudicial misjoinder of indictments." (*Appellant's Supplemental Brief*, 17.)

"'When a claim of ineffective assistance of counsel is based on counsel's failure to file a particular motion, a defendant must show that the motion had a reasonable probability of success.'" *State v. Jones,* 10th Dist. No. 11AP–1123, 2012-Ohio-3767, 2012 WL 3573279, ¶ 31, quoting *State v. Carmon*, 10th Dist. No. 11AP–818, 2012-Ohio-1615, 2012 WL 1247173, ¶ 12. The Supreme Court of Ohio has held that the " '[f]ailure to file a suppression motion does

---

[4] Petitioner does not appear to raise this allegation in these proceedings.

not constitute per se ineffective assistance of counsel.' " *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). *See also State v. Haas*, 10th Dist. No. 10AP–35, 2011-Ohio-2676, 2011 WL 2175023, ¶ 45. Appellant cites to no relevant authority to demonstrate that any of the suggested motions would have had a reasonable probability of success. Furthermore, appellant himself filed motions to dismiss the indictment and motions to suppress evidence in both cases. The trial court heard arguments on appellant's motions and determined that they were without merit. As a result, even if appellant's trial counsel was deficient, appellant fails to show prejudice from his counsel's failure to file motions that appellant himself filed and that were ruled upon by the trial court. *Griffin* at ¶ 39.

Additionally, appellant asserts that his attorney erred by failing to investigate and subpoena witnesses for trial. However, the record is not fully developed as to the allegations made by appellant regarding the investigation conducted by his attorney. "When allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for post-conviction relief rather than a direct appeal." *State v. Davis*, 10th Dist. No. 05AP–193, 2006-Ohio-193, 2006 WL 2780177, ¶ 19, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (1983). *See also State v. Hubbard*, 10th Dist. No. 89AP–1000, 1989 WL 133451 (Nov. 7, 1989) ("Since it is obvious that the issues raised would require evidence outside the record of the trial court's proceedings leading up to the judgment of conviction, leave to appeal is not appropriate since defendant has not demonstrated that error in the proceedings themselves occurred. Thus, even assuming that defendant's counsel was ineffective as defendant contends, a motion for leave to appeal from the conviction is not an available means of raising the issue."). Here, even if appellant was able to demonstrate that his trial counsel was deficient in failing to identify and subpoena appellant's alleged witnesses, determination of appellant's claim of ineffective assistance of counsel would require evidence outside the record to determine whether counsel's action or inaction prejudiced appellant. *Davis* at ¶ 19. Thus, appellant's arguments regarding ineffective assistance of counsel in the investigation of potential witnesses are not before us in the present matter.

Appellant additionally contends that his standby counsel was ineffective because he was not familiar with appellant's case. Here, appellant elected to exercise his right of self-representation. In Ohio, "a criminal defendant has the right to representation by

counsel or to proceed pro se with the assistance of standby counsel," but "these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 32. Thus, appellant cannot complain that he failed to receive effective assistance of counsel because "he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson*, 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407 (1987). Further, appellant points to nothing in the record to suggest that his standby counsel rendered ineffective assistance, or that he was prejudiced by such deficient assistance. Therefore, we find appellant's arguments regarding the effectiveness of his standby counsel to be without merit.

Accordingly, we overrule appellant's sixth supplemental assignment of error.

*State v. Hillman*, 26 N.E. 3d at 1254-56.

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . .the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 Fed.Appx.749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland,* 466 U.S. at 687).

"To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

Petitioner does not dispute the factual findings of the state appellate court indicating that Petitioner's trial counsel filed motions to dismiss the indictments and motions to suppress evidence in both cases, and that the trial court heard arguments on these motions but determined that the motions were without merit. Thus, Petitioner cannot establish prejudice by reason of his counsel's failure to litigate the pre-trial motions. Moreover, it is not apparent that any pre-trial motion filed on Petitioner's behalf would likely have met with success. Where a habeas petitioner alleges that his trial counsel was ineffective for failing to file a motion to suppress, the petitioner must also establish that his claims are meritorious and "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Rodriguez v. Warden, Southern Ohio Correctional Facility*, 940 F.Supp.2d 704, 713-14 (S.D. Ohio 2013)(citing *Henness v. Bagley*, 644 F.3d 308, 317–18 (6th Cir. 2011)(quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Petitioner has failed to meet this standard here. Similarly, Petitioner does not identify any potential defense witnesses who could have provided exculpatory evidence for the defense had they been called to testify. In any event, because Petitioner chose to exercise his right to self representation, it would have been his responsibility to subpoena and call any defense witnesses at trial. "When a defendant chooses to effectuate the right of self-representation, he foregoes, as a factual matter, the benefits associated with representation by legal counsel." *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001)(citing *Faretta v. California*, 422 U.S. 806, 834 (1975)). "[A] defendant who exercises his right to appear *pro se* 'cannot thereafter complain that the quality of his own defense amounted

to a denial of 'effective assistance of counsel.'" *McKaskle v. Wiggins*, 465 U.S. 168, 198 n.8 (1984)(quoting *Faretta,* 422 U.S., at 834 n. 46). Petitioner's claim of the denial of the effective assistance of counsel therefore fails.

Claim seven is without merit.

## Procedural Default

Respondent contends that this Court's consideration of a number of Petitioner's claims (*i.e.*, claims eight through eleven, thirteen, and fifteen) is foreclosed by the doctrine of procedural default. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 724; *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default bars a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 Fed.Appx. 713, 718 (6th Cir. 2007) (following the

four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth

Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule. . . . Second, the court must decide
> whether the state courts actually enforced the state procedural
> sanction. . . . Third, the court must decide whether the state
> procedural forfeiture is an adequate and independent state ground
> on which the state can rely to foreclose review of a federal
> constitutional claim.

*Maupin*, 785 F.2d at 138 (internal quotations omitted).  Finally, if "the court determines that a

state procedural rule was not complied with and that the rule [has] an adequate and independent

state ground, then the petitioner" may still obtain review of his or her claims on the merits if the

petitioner establishes: (1) a substantial reason to excuse the default and (2) that he was actually

prejudiced by the alleged constitutional error.  *Id.*  "Cause" under this test "must be something

external to the petitioner, something that cannot fairly be attributed to him[;]. . . some factor

external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule."

*Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to a failure to raise or

preserve issues for review at the appellate level or a failure to appeal at all.  *Id.* at 750. *See also*

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).

However, "'[i]n appropriate cases' the principles of comity and finality that inform the

concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally

unjust incarceration.'"  *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135

(1982)).  Petitioners who fail to show cause and prejudice for a procedural default may

nonetheless receive a review of their claims if they can demonstrate that a court's refusal to

consider a claim would result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at

750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same).  The fundamental

miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Claims Eight, Nine, Eleven

In claim eight, Petitioner alleges that the prosecutor committed misconduct by filing a motion for joinder of the two cases against Petitioner.  In claim nine, Petitioner alleges that he was denied a fair trial by the introduction of evidence of other bad acts.  In claim eleven, Petitioner alleges that the trial court improperly instructed the jury on evidence of other bad acts.

In his direct appeal, Petitioner argued that the trial court erred in instructing the jury regarding bad acts and that his cases were improperly joined for trial; however, he did not raise the latter claim in the context of prosecutorial misconduct, as he does in these proceedings. Further, he may now no longer do so, because of Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* in this context is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *See Coleman*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts.  *Ford v. Georgia*, 498 U.S. 411 (1991).  "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S.

341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).  Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred.  *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16.  Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law.  Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Moreover, the state appellate court reviewed Petitioner's claim regarding improper joinder of the offenses for plain error only, due to Petitioner's failure to preserve this issue before the trial court:

> [A]ppellant asserts that the November 21 and December 19, 2013 indictments should not have been joined. Relatedly. . . appellant asserts that the trial court erred in instructing the jury regarding other bad acts. Appellant contends that the charges for burglary, attempted burglary, theft, and receiving stolen property are neither the same nor similar, and joinder and other bad acts do not constitute a common scheme or design. The state responds that appellant failed to renew his objection to joinder at the close of the state's case or at the conclusion of all the evidence, and, therefore, the plain-error standard applies. The state also contends that appellant does not meet his burden of showing prejudice as a result of joinder and that, even if appellant could demonstrate prejudice,

such showing could be rebutted by the state's showing that the evidence of the other crimes would be admissible under Evid.R. 404(B) or by showing that the evidence of each crime is simple and direct.

Because appellant did not renew his objection to joinder of the charged offenses at the close of the presentation of the state's evidence or at the close of the presentation of all evidence, he has waived all but plain error. *State v. Wilson*, 10th Dist. No. 10AP–251, 2011-Ohio-430, 2011 WL 345636, ¶ 12, citing *State v. Williams*, 10th Dist. No. 02AP–730, 2003-Ohio-5204, 2003 WL 22232921, ¶ 29. "Under the plain error test, a reviewing court must consider whether, 'but for the existence of the error, the result of the trial would have been otherwise.' " *Wilson* at ¶ 12, quoting *State v. Wiles*, 59 Ohio St.3d 71, 86, 571 N.E.2d 97 (1991).

Under Crim.R. 13, a trial court may order two or more indictments to be tried together "if the offenses or the defendants could have been joined in a single indictment or information." Pursuant to Crim.R. 8(A), two or more offenses may be charged in the same indictment if they are of "the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of the same or similar character.' " *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), quoting *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981). "Nonetheless, an accused may move to sever counts of an indictment on the grounds that he or she will be prejudiced by the joinder of multiple offenses." *Wilson* at ¶ 13, citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49.

To prevail on a motion to sever, a defendant " 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.' " *Wilson* at ¶ 14, quoting *Lott* at 163, 555 N.E.2d 293. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision to deny severance. *Wilson* at ¶ 14, citing *Lott* at 163, 555 N.E.2d 293.

However, even if the defendant establishes prejudice resulting from the joinder, the state may rebut the showing of prejudice in two ways. First, the state can demonstrate that evidence of one offense would be admissible at a separate trial of the other offense

under Evid.R. 404(B*). Wilson* at ¶ 15, citing *State v. Tipton*, 10th Dist. No. 04AP–1314, 2006-Ohio-2066, 2006 WL 1102812, ¶ 27; *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 30. Evid.R. 404(B) recognizes that evidence of other crimes may be admissible if the evidence pertains to "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Second, the state can demonstrate that evidence of the offenses joined at trial is simple and direct, so that a jury is capable of segregating the proof required for each offense. *Wilson* at ¶ 15; *Brinkley* at ¶ 30. "These two tests are disjunctive, so that the satisfaction of one negates a defendant's claim of prejudice without having to consider the other test." *Wilson* at ¶ 15, citing *State v. Gravely*, 10th Dist., 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 38.

Here, appellant contends that evidence of the separate incidents would not be admissible as "other-acts" evidence under Evid.R. 404(B). Appellant states that the October 21 burglary did not "establish the requisite 'scheme, plan or system,' much less 'the immediate background' forming the 'foundation' for the subsequent November 13 burglary which occurred in a wholly different location, different date and different time of day as that of the earlier burglary." (*Appellant's Merit Brief*, 12.) In response, the state argues that evidence of the separate burglaries would have been admissible under Evid.R. 404(B) to prove identity.

"For other-acts evidence to be admissible to prove identity, the 'other-acts evidence must be related to and share common features with the crime in question.' " *State v. Massey*, 10th Dist. No. 99AP–1355, 2000 WL 1742072 (Nov. 28, 2000), quoting *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 616 (1994), paragraph one of the syllabus. Evidence of other acts is admissible to prove identity if there is "substantial proof that the alleged other acts were committed by the defendant." *Lowe* at 530, 634 N.E.2d 616. *See also State v. Parnell*, 10th Dist. No. 11AP–257, 2011-Ohio-6564, 2011 WL 6647293, ¶ 31.

In *Massey,* the defendant asserted that the trial court erred by joining four separate indictments containing thirteen charges arising from four separate incidents for trial. Specifically, the defendant contended that the joinder allowed the jury to hear inadmissible "other-acts" evidence from the separate cases. In response, the prosecution argued that the other-acts evidence was admissible under Evid.R. 404(B) to prove identity. We concluded that the other-acts evidence would have been admissible even if the cases had been tried separately because (1) all of the cases shared a

"temporal, modal, and situational relationship"; (2) the victim in each case was a business and the method of accomplishing the crime was comparable; (3) witnesses to three of the crimes identified the defendant as the perpetrator, and property from two of the crimes was recovered from the defendant's possession; and (4) the jury was given a limiting instruction on the use of the other-acts evidence. *Id*.

First, we note that, as in *Massey*, appellant has failed to specifically point to any evidence of actual prejudice arising from the trial court's joinder of his indictments. A defendant asserting prejudice as a result of joinder "may not prevail by presuming prejudice based on the number of counts." *Id*. Because appellant has "failed to suggest how he likely would have been acquitted on some counts had the * * * incidents been tried separately," we need not consider whether the trial court abused its discretion in granting the state's motion to join the indictments. *Id*.

Nevertheless, in the interest of justice, we will consider whether the state could rebut a showing of prejudice by demonstrating that evidence of the other crimes would be admissible even if the indictments were severed. As in *Massey*, the charged offenses here share a "temporal, modal, and situational relationship." *Id*. The incidents in question took place within weeks of one another, a period of time shorter than the charged offenses in *Massey*. Additionally, the victims in each case were residents of homes or apartments, and the method of accomplishing the crimes was comparable; namely, the entry or attempted entry into unsecured dwellings. *See Wilson* at ¶ 21 (finding that the evidence demonstrated that "the crimes followed a similar pattern and were geographically linked such that the evidence of any one of the robberies would have been admissible at the trial of each of the others under Evid.R. 404(B) to establish appellant's identity"); *Massey*. Finally, the victims of each of the burglaries identified property recovered from appellant as belonging to them.

The trial court also issued the following charge to the jury regarding the other acts evidence admitted at trial:

Evidence was admitted of another act which may have been committed by the Defendant. You are to consider this evidence on the issue of identity. If you believe that the Defendant committed the other act, you may consider evidence of scheme, plan or system as you decide whether the acts alleged in the indictment, if committed, were committed by the Defendant rather than some other person.

Let me caution you that the evidence of scheme, plan or system is only one of the things you are to consider in determining identity. The State must prove identity beyond a reasonable doubt. If you find that the Defendant committed the other act, you may not presume that he committed the acts charged. You may, however, consider the other act along with all other evidence in deciding whether the State has proved beyond a reasonable doubt that the Defendant rather than some other person committed the offenses charged.

(Tr. 300–01.) Appellant argues without supporting his argument that this instruction was in error because it failed to instruct the jury as to the importance of considering each count and evidence applicable to each count separately. We note that the trial court instructed the jury on each offense and that the instructions include the admonition that "[i]f you find that the Defendant committed the other act, you may not presume that he committed the acts charged." (Tr. 301.)

Furthermore, the Ohio Jury Instructions for other acts evidence read as follows:

Evidence was received about the commission of (crime[s]) (wrong[s]) (act[s]) other than the offense(s) with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in (conformity) (accordance) with that character. If you find that the evidence of other (crime[s]) (wrong[s]) (act[s]) is true and that the defendant committed (it) (them), you may consider that evidence only for the purpose of deciding whether it proves

* * *

(a) the        absence        of        (mistake)        (accident)

(or )

(b) the defendant's (motive) (opportunity) (intent or purpose) (preparation) (plan) to commit the offense charged in this trial,

(or )

46

(c) knowledge of circumstances surrounding the offense charged in this trial,

(or )

(d) the identity of the person who committed the offense in this trial

(or )

(e) (*describe other purposes*).

That evidence cannot be considered for any other purpose.

(Emphasis sic.) Ohio Jury Instructions, CR Section 401.25. Here, as we earlier noted, the trial court instructed that, "[i]f you find that the Defendant committed the other act, you may not presume that he committed the acts charged." (Tr. 301.) This instruction and the outline provided in the Ohio Jury Instructions serve a similar, limiting purpose, and the trial court's instruction may be considered to contain an even stronger admonition against the presumption of guilt arising out of the admission of other-acts evidence by requiring the jurors to consider the other acts and the charged offenses separately. Therefore, given the foregoing and considering that appellant fails to support his arguments, we cannot find that the trial court's other-acts instruction constituted an abuse of discretion. *State v. Smith*, 10th Dist. No. 01AP–848, 2002-Ohio-1479, 2002 WL 484927, citing *Jenkins v. Clark*, 7 Ohio App.3d 93, 100, 454 N.E.2d 541 (2d Dist.1982) ("It is well established that a trial court has broad discretion in instructing the jury.").

We further find that the trial court specifically instructed the jury that it was to consider the other-acts evidence that was admitted for the purpose of determining identity, one of the enumerated exceptions to the general prohibition on other-acts evidence. *See State v. Broom,* 40 Ohio St.3d 277, 281, 533 N.E.2d 682 (1988) (noting that the jury "was given a carefully drafted limiting instruction to explain that the evidence concerning those two incidents was admitted only for the purpose of considering whether those acts tended to show intent, motive, scheme, plan or system" for the charged crimes); *Massey.* As a result, we conclude that the state could rebut a showing of prejudice resulting from joinder of the indictments because the evidence of the other crimes would be admissible under Evid.R. 404(B) to prove identity even if the indictments were severed.

Although the satisfaction of the other-acts test would ordinarily end the analysis, we nonetheless further find that the state can rebut a showing of prejudice because the evidence of the offenses joined at trial was simple and direct, thus precluding juror confusion resulting from joinder. "Evidence is 'simple and direct' if the jury is capable of segregating the proof required for each offense." *Wilson* at ¶ 23, citing *State v. Cameron*, 10th Dist. No. 09AP–56, 2009-Ohio-6479, 2009 WL 4698546, ¶ 35.

Here, the separate incidents in the two indictments involved a simple set of facts and a limited number of witnesses whose testimony was straightforward. Additionally, as noted above, the trial court instructed the jurors regarding the admissibility and limited purpose of other-acts evidence. *See Wilson* at ¶ 24–25 (noting that a "jury is presumed to follow the instructions of the court"). As a result, because the evidence was simple and direct, the possibility of jury confusion was extremely remote such that any claim of prejudice arising from joinder would be negated. *See State v. Bass,* 10th Dist. No. 12AP–622, 2013-Ohio-4503, 2013 WL 5595417, ¶ 21–24; *Wilson* at ¶ 23–25.

In conclusion, we find no error in the trial court's decision to join the two indictments for trial and we find no abuse of discretion in the trial court's jury instructions relating to other-acts evidence.

*State v. Hillman,* 26 N.E. 3d at 1247-51.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour,* 224 F.3d at 557. As explained by the United States District Court for the Northern District of Ohio:

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.2004), cert. denied, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D.Ohio Feb.10, 2006).

> A state court's review of an issue for plain error is considered by
> the Sixth Circuit as the enforcement of a procedural default.
> *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal
> court, in determining whether a state court has relied on a
> procedural rule to bar review of an issue, examines the latest
> reasoned opinion of the state courts and presumes that later courts
> enforced the bar instead of rejecting the claim on the merits.
> *Hinkle*, 271 F.3d at 244 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,
> 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D.Ohio 2007). This Court concludes that

petitioner has waived the right to present claims eight, nine and eleven in these habeas corpus

proceedings.

Moreover, the record does not support Petitioner's contentions that the trial court issued

improper jury instructions on other bad acts evidence or that such claim provides a basis for

habeas corpus relief.  Alleged errors in state jury instructions warrant federal habeas relief "only

in extraordinary cases."  *Daniels v. Lafler*, 501 F.3d 735, 741-42 (6th Cir. 2007)(citing *Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990)).

> The question in [ ] a collateral proceeding is 'whether the ailing
> instruction by itself so infected the entire trial that the resulting
> conviction violates due process,' *Cupp v. Naughten*, 414 U.S.
> [141,] 147 [(1973)], not merely whether 'the instruction is
> undesirable, erroneous, or even universally condemned,' *id*. at 146,
> 94 S.Ct. 396." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct.
> 1730, 52 L.Ed.2d 203 (1977).

*Id*.  The record fails to reflect that this is such an extraordinary case.  Moreover,

> Both the Supreme Court and the Sixth Circuit have repeatedly held
> that a defendant is not denied a fair trial by the admission of prior
> bad acts evidence which is relevant in the defendant's trial. *See
> Estelle,* 502 U.S. at 69–70; *Dowling v. United States*, 493 U.S.
> 342, 353–54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v.
> Mitchell*, 268 F.3d 417, 439–40 (6th Cir. 2001); *Pennington v.
> Lazaroff,* 13 Fed. Appx. 228, 232 (6th Cir. 2001) (*per curiam*)
> (unpublished); *Manning v. Rose*, 507 F.2d 889, 893–95 (6th Cir.
> 1974).

*Norris v. Davis*, No. 05–60126, 2006 WL 1581410 (E.D.Mich. May 3, 2006); *see also Williams v. Warden, Chillicothe Correctional Inst.*, No. 2:13-cv-1002, 2015 WL 3466120, at *11 (S.D. Ohio June 1, 2015)("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.")(quoting *Bugh v. Mitchell*, 329 F.3d 469, 512-13 (6th Cir. 2003)).

In short, claims eight, nine, and eleven are procedurally defaulted and without merit.

Claims Ten, Thirteen, Fifteen

In claim ten, Petitioner alleges that the trial court improperly interfered with his right to an impartial jury.  In claim thirteen, Petitioner alleges that his sentence violates the Eighth Amendment.  In claim fifteen, Petitioner alleges that he was denied a fair trial because the trial court failed to hold a proper suppression hearing where witnesses were called to testify, denying him the right to compulsory process.  Again, Petitioner failed to raise these claims on direct appeal.[5]  He may now no longer do so, by operation of Ohio's doctrine of *res judicata*.  *See State v. Cole,* 2 Ohio St.3d at 114; *State v. Ishmail*, 67 Ohio St.2d at 16; *State v. Perry,* 10 Ohio St.2d at 175.  Petitioner has therefore likewise waived these claims for federal habeas corpus review.

Petitioner may still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. Petitioner has failed to establish cause and prejudice for his procedural default of these claims.

---

[5] Petitioner argued on direct appeal that the trial court had improperly failed to merge his burglary convictions because the cases had been joined for trial, and failed to make the state findings required for the imposition of consecutive sentences.  *State v. Hillman*, 26 N.E.3d at 1257.

As noted *supra*, the United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims*." Schlup,* 513 U.S. at 326–27. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally-barred habeas petition. *Id.* at 317. The actual innocence claim contemplated by *Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – *i.e.,* evidence not previously presented at trial – would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup*, 513 U.S. at 317. The concept of actual innocence is restricted to factual innocence and does not encompass mere legal insufficiency. *Souter* at 590 (citing *Bousley v. U.S.*, 523 U.S. 614, 623). Application of the actual innocence exception should be "rare" and "only in the extraordinary case." *Schlup* at 321.

Petitioner does not offer, and the Court's independent review of the record does not reveal, any "new facts" that undermine the result of Petitioner's trial. Petitioner cannot,

therefore, establish a claim for actual innocence sufficient to avoid his procedural default of claims ten, thirteen, and fifteen.

### Recommended Dispostition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**  It is **FURTHER RECOMMENDED** that Petitioner's *Motion for Sanctions* (ECF No. 43) be **DENIED.**

Petitioner's *Request for the Court to Take Judicial Notice* (ECF No. 38), Petitioner's *Motion for Leave to File Sur Reply to Respondent's Motion in Opposition to Petitioner's Motion for Judicial Notice* (ECF No. 40), and Petitioner's *Motion to Take Judicial Notice and Motion for Order to Expand the Records* (ECF No. 41) are **DENIED**.  Petitioner's *Motion for an Immediate Ruling in this Case as Justice Requires* (ECF No. 45) is **DENIED** as moot.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report*

*and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140,

106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


                                                    *s/ Norah McCann King*
                                                 Norah McCann King
                                                 United States Magistrate Judge
                                                 October 20, 2016